I see both counsel on the screen. Good morning. Welcome to the Ninth Circuit. If you can hear me, would you please raise your hand? I see two hands. And Mr. McHenry, I hope you have recovered from your bicycle accident. I appreciate that, Your Honor. I was just talking to Ms. Miles about that. I've certainly recovered physically while I dig out from the work that piled up in my absence. But thank you for your inquiry. Well, of course, we are, of course, quite willing to postpone in light of that. Well, we've got one case this morning, United States v. Mandish. We scheduled for one minute, one side. And Mr. McHenry, you go first. Thank you, Your Honor. And I would like to reserve, I think, two minutes for rebuttal as I start here. So may it please the court and counsel. In Dolan v. The United States back in 2010, a closely divided Supreme Court held that notwithstanding the clear language of the Mandatory Victims Restitution Act, a court can nevertheless impose restitution beyond the MVRA's 90-day statutory deadline, so long as the defendant had notice within that 90-day deadline, the restitution would be imposed. It doesn't really say so long as, right? It says at least when. Well, it does. The language is at least when or particularly when. And Your Honor, there could be other situations, right? There could be, Justice Breyer says, at least when, but not only. That's right, Your Honor. And since Dolan came out in 2010, there have, of course, been, I think I found probably 300 cases that cited Dolan for the issue across the country. And if we look at those cases that examine this particular issue, every single one focuses on the relevant question of whether the defendant had notice or not. So, while Justice Breyer did couch his opinion somewhat with the language he used, as that case has been applied in practice since, in the 10 years, the more than 10 years since, that inquiry about the notice to defendant has been the critical fact that every court considers. I think it's notice of. Notice that further restitution would definitely be imposed or notice that further restitution was a reasonable possibility or something else? It is, and in all the cases that have discussed it, it is the notice that restitution will definitely be imposed. And the only outstanding question is the amount that will be imposed. How far outside the 90-day deadline were we in this case? I believe we were about two months outside the deadline when the court, sua sponte, contacted the parties and asked what was happening with the restitution. And then when the order was ultimately entered, we were about three months beyond the deadline. And what prejudice, if any, did your client suffer beyond the fact that additional money was assessed? Well, certainly that, Your Honor. Also, first of all, I'll point out that at least under the statute as it's written and the way I'm arguing it, we're not required to show any prejudice on the part of the defendant. I understand that you would make that argument, but I'm asking you if there was any prejudice. And if so, what was it? Well, there was in that as we led up to sentencing and we're discussing the restitution issues with opposing counsel, Mr. Mandish had a limited number of assets, a limited, very limited, I should say, amount of assets that he will allocate to various things as he was preparing for his present sentence. And he had an understanding that as he started his prison sentence and even beyond that, as he began serving it and still had some financial assets that he was allocating, that he would not be required to pay any other restitution once that deadline passed. So part of his prejudice is it hamstrung his ability to plan for it, to be able to make those payments. He worked very hard to be able to make the payments that he did make at the time of sentencing and had kept some things back in anticipation of potential additional restitution. That ultimately, once the 90-day deadline passed, he was under the impression, certainly, that restitution did not need to be imposed or wasn't going to be imposed. I would like to go back to Judge Okuda's question about Judge Breyer's language. And it's not because it's not just the way that Dolan has been interpreted in the years since. It's also Dolan itself made clear that notice was a big, big part of their decision. They laid out six different legs, so to speak, of their justification for that case. And the sixth one was pointing out that the defendant, quote, can normally mitigate any harm that a missed deadline might cause, at least if, as here, he obtains the relevant information regarding the restitution amount before the 90-day deadline expires. So one of the justifications for that ruling was that the defendant could take steps on his own or her own to find out what the restitution amount was going to be if the 90-day deadline was coming up. But obviously, the defendant could only do that if they had the notice of the intent to actually impose that restitution. Why couldn't he have made some kind of inquiry here, though? Well, Your Honor, I think that puts us into kind of the absurd situation that Justice Roberts discussed in his dissent about a defendant who should have received a harsher sentence is expected to invoke a different remedy to ensure that he gets it. I mean, he's not being told that restitution is going to be imposed. I don't feel it should be incumbent on the defendant, as opposed to the government, to push that restitution along. Now, certainly, if the court had said, we are going to order restitution in this case, it would have made sense for him to find out ahead of time what that amount was going to be and push to find that amount. That is not the situation we're in in this case. Didn't the district court grant the government's motion to hold open the restitution? So, I mean, clearly at the sentencing, the court indicated it was holding open or deferring the additional restitution that the government might come up with. The court certainly agreed to hold it open for 90 days, Your Honor. The court did not set a hearing on it, as we've seen in some of these other cases that could indicate at least an implied intent. The court never said it was going to impose additional restitution. That was a strong implication since the government asked the district court to hold it open in order to impose additional restitution. Well, Your Honor, I think what happened was the government asked the court to hold it open because they might have additional restitution requests. And what we said at that sentencing hearing, and this is in my briefs and the transcripts, was that just because the government is requesting restitution doesn't mean that it would be imposed and that we would be entitled to argue against the imposition of that restitution depending on the evidence the government used to support it. So what went on between the time of the district judge saying, well, if the government seeks additional restitution, I'll hold it open for 90 days, and the eventual imposition of the restitution outside the 90-day period? What went on during that more than 90-day period? Nothing went on, Your Honor. Were there any negotiations between your client and the government? No, the government apparently had several restitution requests and had them actually many, many months even before the sentencing and never communicated that to trial counsel, which happened to be me. And in fact, the only reason that we ended up having a restitution hearing was because the court, sui sponte, contacted the parties to ask what was going on. There was nothing that occurred. We were told that perhaps there would be additional restitution requested, and then those requests never came in, again, despite apparently being in the hands of the government for several months leading up to that. Does this sort of put the burden on the defendant? Because in addressing the question about will this affect the appeal right of the defendant, Justice Breyer says, well, he could bring a writ of mandate, he could ask the court to set a hearing. It seems to put the burden on the defendant, at least in Justice Breyer's view. Again, Your Honor, that is that same clause where he does say the defendant could certainly seek mandamus or ask for a hearing if he obtains the relevant information regarding the restitution amount before the 90 day deadline. They very much made clear that in that situation, what they were referring to was in the situation where the defendant has noticed, he can be expected to do that. But again, if the defendant isn't on notice that restitution is going to be ordered, it is non-incumbent upon the defendant to seek that that restitution be ordered against him. I am well past my reserved rebuttal time, Your Honor. I'd like to at least reserve the remaining time to respond to any arguments of the government. Well, we'll make sure you get a chance to respond, and we won't cut you off. We'll make sure you get to say what you need to say. Let's hear from the government. Ms. Miles. May it please the court. Suzanne Miles for the United States. Just as a factual matter, in this case, not only did the district court indicate that it might impose restitution, it actually imposed restitution at the time of sentencing for the three victims that it already had information for. It imposed restitution. And then it said it would leave open for 90 days to consider additional victims that might come forward. And so where was the government during that 90-day period? I mean, you come in quite a bit later. So what's going on? It was an oversight, Your Honor. It was a mistake on the government's part. The prosecutor here thought that he had forwarded the information on to the defense counsel. It turned out that I'm not entirely certain what the glitch was, but somehow those notices got caught up in his outbox, whether it was because of the size of the files, because of government firewalls, we're not exactly sure. It was absolutely a mistake on the part of the government. There's no doubt about that. And as soon as it was figured out, we did our best to make good on it. We got the information to the court, to the defendant, and the court did exactly what Dolan allows it to do. And Dolan says specifically. And you say as soon as it was figured out, you mean as soon as the district court notifies you? That's right. When the district court said that it hadn't gotten that information. Yeah, so what prompts you doing it is the court saying, wait a minute, where is everything? That's right. Up to that point, the prosecutor thought that the information had been sent along, and so he didn't know. And what Dolan says is that victims don't get docked for mistakes on the part of the government. It says that explicitly at page 611. What's the limiting principle, if any? What if a year had gone by? Well, due process is the limiting principle, Your Honor. So we need to look, it's not a specific timeline. And when you look at those 300 cases that have come out after Dolan, time is never the limiting factor. It's a due process consideration. And one of the pieces of that is, did the defendant attempt to secure his own rights as Dolan asks that they do? And also a question of prejudice. And financial liquidity is not a component of that inquiry. All of that is clear in Dolan. What's the consequence with respect to timeliness of appeal? Justice Breyer spends a fair amount of time on this, but I'm not quite sure how this operates. Let's imagine that the same thing happened here, except that it took a year. Does that affect timeliness of the appeal or when the appeal must or should be taken? No, it doesn't. So what other circuits have done across the country is they've essentially bifurcated the appeal process. So a defendant's right to appeal the substantive sentence, the term of imprisonment, perfects at the time of sentencing. To the extent that there is a delay in restitution, the one-year time limit or the time limit for being able to appeal that comes after the restitution order has been actually issued. So one doesn't affect the other. Is there any statutory basis for bifurcating the appeal or is that done without benefit of statute? I think the statutory basis is the finality rule in 1291. And what courts have found is that the judgment becomes final as to the sentence, as to the punishment or the imprisonment term when that is issued. Because delay would affect due process. So there's both a constitutional component as well as an anchoring point in the appellate finality rule of 1291. So the outer boundary of due process, you've not quite spelled out all of the due process arguments that might be available. But it really sounds as though the only due process argument that will work is prejudice. That is to say, you know, this is five years later. What am I supposed to do? I can't resurrect any of the information. But this could go for five years? Your Honor, again, I don't think that a time limit alone would be enough. I don't see any echoes of that anywhere. And trust me, I think I have now skimmed all 300 of the cases that have come from Dolan. I've not read all of them. I've read some. Doesn't the statute allow any amount of delay? Because I think Dolan mentions that because of the 60 days after discovery, even if the discovery is 10 years later, the victims can come in. That's permitted by the statute. Isn't that right? That's right. That's right. For the newly discovered evidence component of it, absolutely. Although this is not newly discovered. You had it all along. Carry on. That's right. We make no qualms about the fact that this was due to a government oversight. But when we're looking at due process, we look at Barker v. Wingo and the four factors that we have there. And what we hear echoed in the Barker cases is that negligence on the part of the government is a neutral component when we're looking at due process. And the Supreme Court echoed exactly that in Dolan when it said that the victims should not carry the cost of a mistake made either by the court or by the government. Now, that's not to say that we're not going to take every effort not to make mistakes. Even after this case, our office did additional training. We do our best to make sure those mistakes aren't made. But the victims are not the ones to suffer here. And due process is our stopgap. So it's those four Barker v. Wingo factors that we look at. Are there any limits on this if the losses are ascertainable more than 10 days prior to sentencing? To be honest, Your Honor, I haven't found any court that hangs on that. And even in Dolan, the losses actually were ascertainable before the 90-day deadline. So the Supreme Court didn't hang on that language either. In Dolan, the information was available to the court. The probation office actually sent the information to the court before the 90-day window. And it was the court's delay in setting a hearing that blew the deadline there. And so that ascertainable language did not play a role in the Supreme Court's interpretation of the statutory language. And I've seen no court bring it in since then. Do we know what ascertainable means in this context? My understanding from looking at the cases is ascertainable means not just what information is available to the court, but whether a determination has been made. So, for example, where there is conflict about the actual amount that will be paid, then the courts have deemed that the information wasn't perfected before the sentencing deadline. And that was the case here. The defendant argued under the Paroline factors that the information that was being requested by the victims was not an appropriate amount. And in fact, the court didn't impose the restitution that was being requested by the victims. It imposed a far lesser amount. So even with the information that was forwarded, we were much short of an actual decision on the adequate restitution, especially post-Paroline. Now, Your Honors, I'm happy to answer any other questions, but this case falls squarely within the corners of Dolan, and I'm happy to submit on the briefs. You know, on the facts of this case, I don't think there's any substantial injustice being done. If we were to sustain the restitution award of additional $12,000, it's largely fanciful, I suspect, because of the insolvency of the defendant and the term of imprisonment. Of course, we're making rules not only for this case, but broader cases. And it does concern me, the open-endedness of this, that we may be talking about another case in which we're talking, you know, $500,000, and the government comes in three years later and says, well, we'd like an additional $500,000. And you say, well, there's really no limitation except for due process, and I think the due process here is going to be a very difficult standard for a defendant to meet. So is there some comfort you can give me that we're not unleashing an instrument here that will actually be the cause of some trouble down the line in a different case? No, I hear you, Your Honor, and I understand that. And that's one of the reasons that I'm hesitant to encourage a rule that's time-based only, because I think that it's important to actually assess the prejudice in each individual case. And I think a blanket rule does the opposite of what the Supreme Court is asking for,  while still maintaining that baseline of due process rights on the part of the defendant. And so I guess I realize that you're telling me that due process is not a comfort to you, but I think it is a comfort. I think as time ticks by, the point that Your Honor brought up about the most likely form of prejudice, which is that the defendant really can't recreate any meaningful objection to the calculation of the restitution, becomes more and more possible and more and more prevalent. And that is a key piece of the prejudice that the Supreme Court noticed in Dolan, and one that I would offer up here. I see that I'm out of time, so I ask you to affirm the District Court's decision here. Any further questions on that? Okay, thank you very much. Let's put two minutes on the clock for a moment and then see what happens. Mr. McHenry. Thank you, Your Honor. First, Dolan does not say that a victim can never get docked because of the failure of the government or the court, frankly, to meet a deadline. It does say that the victim's interests are the primary considerations in the MVRA, which is not a surprising concept to anybody, and uses that concept as support for where they ultimately arrive. But nowhere in Dolan does it say that a victim can never suffer consequences as a result of the government's blunder. And, in fact, what the dissent in Dolan said was whether or not that limit was primarily designed to help victims of crime. It doesn't cease to be the law when it is invoked by the defendants. And, again, it is a rule that they imposed. And since then, every case that has interpreted it has focused solely on the issue of the defendant's notice. And if this court were to uphold this order of restitution, it would be the only case post-Dolan under federal jurisprudence that allowed a restitution award past the MVRA deadline where the defendant did not have notice of the court's intent to impose additional restitution. The PSR in this case did not say restitution would be imposed. It said it might be. The judgment in this case did not say restitution would be imposed. It said it might be. The only case that I could find in the Ninth Circuit is in my brief. It's U.S. v. Hymas, and it's an unpublished opinion. But I did include it in my brief because it's a very straightforward analysis by this court where it says the defendant did not have notice of the intent to award the restitution, so they vacated the order. I included it again because it was a very straightforward analysis, but also as an example of a situation where this court has in the past looked at this very situation and ruled in favor of the defendant. So those are what I wanted to add regarding what the government said in its arguments. I'm also, of course, open to any further questions from this court. But I believe this is this case. I agree with the government that this case is squarely on all fours with Dolan in that it does not contain the notice requirement that Dolan's majority suggested was required. Dolan's dissent affirmatively said was required and that every case that has looked at Dolan since has applied. Okay. Thank you very much. Thank both sides for your good arguments. United States v. Mandich now submitted for decision. Thank you, Your Honor. Thank you. Thank you, Your Honor. Court, for this session stands adjourned. Thank you, everyone.
judges: FLETCHER, IKUTA, BRESS